CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Teresa Allen, SBN 264865
<u>Mail</u>: PO Box 262490
San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, <br><br> Plaintiff, <br><br> v. <br><br> **Stanton E. Ball**; **Zevgolatio Corporation,** a California Corporation; and Does 1-10, <br><br> Defendants. | **Case No.** <br><br> **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Scott Johnson complains of Defendants Stanton E. Ball, Zevgolatio Corporation, a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2. Defendant Stanton E. Ball owned the real property located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, in June 2016.

3. Defendant Stanton E. Ball owned the real property located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, in July 2016.

4. Defendant Stanton E. Ball owned the real property located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, in August 2016.

5. Defendant Stanton E. Ball owned the real property located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, in October 2016.

6. Defendant Stanton E. Ball owns the real property located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, currently.

7. Defendant Zevgolatio Corporation owned The Diner of Los Gatos located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, in June 2016.

8. Defendant Zevgolatio Corporation owned The Diner of Los Gatos located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, in July 2016.

9. Defendant Zevgolatio Corporation owned The Diner of Los Gatos located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, in August 2016.

10. Defendant Zevgolatio Corporation owned the The Diner of Los Gatos located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, in October 2016.

11. Defendant Zevgolatio Corporation owns The Diner of Los Gatos ("Restaurant") located at or about 235 Los Gatos Saratoga Rd., Los Gatos, California, currently.

12. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of,

and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

13. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

14. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

15. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

16. Plaintiff has gone to the Restaurant on a number of occasions during the relevant statutory period, including June 2016, July 2016, August 2016 and October 2016. Plaintiff went there to eat.

17. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

18. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

Complaint

19. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no compliant, accessible handicap parking spaces available for persons with disabilities that complied with the Americans with Disability Act Accessibility Guidelines (ADAAG) during plaintiff's many visits.

20. Instead, there are two faded parking spaces ostensibly reserved for persons with disabilities.

21. Unfortunately, there is no access aisle that serves these two spaces. Indeed, there looks to have possibly been an access aisle next to the parking spaces but the border around the would-be access is not blue. There is no "No Parking" warning in the access aisle. There is no pole-mounted signage in front of either parking space, which would put other customers on notice that there could be parking spaces marked and reserved for persons with disabilities.

22. In sum, the parking spaces simply fail to comply with the law.

23. On information and belief, plaintiff alleges that there used to be a compliant, accessible parking spaces in the parking lot prior to plaintiff's visits.

24. Plaintiff alleges, on information and belief, defendants allowed the parking spaces that were previously reserved for persons with disabilities to fade away into oblivion.

25. Additionally, the parking stall and access aisles were not level with each other.

26. The parking space and access aisle had slopes greater than 2.1%.

27. Currently, there are no compliant, accessible parking spaces designed and reserved for persons with disabilities in the parking lot serving the Restaurant.

28. The defendants had no policy or plan in place to make sure that the accessible parking spaces reserved for persons with disabilities remained useable prior to plaintiff's visits.

Complaint

29. The defendants have no policy or plan in place to make sure that the accessible parking spaces reserved for persons with disabilities remain useable currently.

30. Currently, the parking stall and access aisles are not level.

31. Currently, the slopes are greater than 2.1%.

32. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

33. The cashier counter at the Restaurant was more than 36 inches in height.

34. There was no lowered, 36-inch or lower portion of the transaction counter at the Restaurant for use by persons with disabilities during any of plaintiff's visits.

35. Currently, the transaction counter at the Restaurant is more than 36 inches in height.

36. In fact, the transaction counter is 42 inches in height.

37. Currently, there is no lowered, 36-inch or lower portion of the transaction counter at the Restaurant for use by persons with disabilities.

38. Restrooms are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

39. The restroom mirror at the Restaurant was mounted on the wall so that its bottom edge was higher than 40 inches above the floor and was not effectively used by wheelchair users.

40. The restroom sink was mounted such that the counter or rim was higher than 34 inches above the finish floor.

41. There was wall a mounted accessory and equipment in the restroom including soap dispenser. This dispenser was mounted on the wall so that its highest operable part was greater than 54 inches above the finish floor and inaccessible to wheelchair users.

Complaint

42. There was no clear floor space in front of the disposable toilet seat cover dispenser because it was mounted on the wall behind the toilet.

43. There was no clear floor space in front of the soap dispenser because it was blocked by a trash can.

44. Currently, the restroom mirror at the Restaurant is mounted on the wall so that its bottom edge is higher than 40 inches above the floor and is not effectively used by wheelchair users.

45. Currently, the restroom sink is mounted such that the counter or rim is higher than 34 inches above the finish floor.

46. Currently, there is a wall mounted accessory and equipment in the restroom including soap dispenser. This dispenser is mounted on the wall so that its highest operable part is greater than 54 inches above the finish floor and inaccessible to wheelchair users.

47. Currently, there is no clear floor space in front of the disposable toilet seat cover dispenser because it is mounted on the wall behind the toilet.

48. Currently, there is no clear floor space in front of the soap dispenser because it is blocked by a trash can.

49. The barriers existed during each of plaintiff's visits in 2016.

50. The plaintiff frequents the Los Gatos area and has visited there on scores of occasions this year. He ate at the Restaurant twice in June 2016 and has receipts. He encountered the barriers. He visited the Restaurant on three other occasions but was deterred from going inside.

51. Plaintiff visited the Restaurant twice in June 2016.

52. Plaintiff visited the Restaurant once in July 2016.

53. Plaintiff visited the Restaurant once in August 2016.

54. Plaintiff visited the Restaurant once in October 2016.

55. These barriers caused Plaintiff great difficulty and frustration.

56. Plaintiff would like to return and patronize the Restaurant but will be

Complaint

deterred from visiting until the defendants cure the violations.

57. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

58. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

59. Plaintiff is and has been deterred from returning and patronizing the Restaurant because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Restaurant as a customer once the barriers are removed.

60. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

61. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of

accessible facilities was not an "accident" because had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

62. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

63. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

   a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

   c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities,

including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

64. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2 Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. Id. It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. Id. Signs must be posted so that they cannot be obscured by a vehicle parking in the space. Id. An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. Id. Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. Id. Additionally, the

Complaint

surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. Id. And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. Id.

65. Here, there was no blue border around an access aisle or parking space, there was no "NO PARKING" lettering, no fine language, and the parking simply failed to comply.

66. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle is not level and has a ramp taking up part of the access aisle. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id*. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

67. Here, the failure to provide level parking is a violation of the law.

68. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

69. Here, no such accessible cashier counter or a lowered, 36 inch counter

Complaint

has been provided in violation of the ADA.

70. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

71. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

72. Sinks must be mounted so that the counter or rim is no higher than 34 inches above the finish floor. 1991 Standards § 4.24.2; 2010 Standards § 606.3.

73. Here, the sink was mounted higher than the maximum permitted and is a violation of the ADA.

74. If controls, dispensers, receptacles or other equipment is provided in a restroom, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 54 inches above the floor. 1991 Standards § 4.22.7; 4.27.

75. Here, the failure to ensure that the wall mounted accessories met the height requirement is a violation of the ADA.

76. Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

77. Here, the failure to provide such floor space is a violation of the law.

78. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

79. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

80. Given its location and options, plaintiff will continue to desire to patronize the Restaurant but he has been and will continue to be discriminated

against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

81. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

82. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

83. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

84. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the

plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: November 7, 2016        CENTER FOR DISABILITY ACCESS

By: _____
Russell Handy, Esq.
Attorneys for plaintiff

Complaint